UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JUSTIN MAHLON DELLES,

                    Plaintiff,                        Case No. 1:25-cv-852

v.                                                    Honorable Phillip J. Green

BRANCH COUNTY, et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a county jail inmate under 42 U.S.C. § 1983.  In a separate order, the Court has granted Plaintiff leave to proceed *in forma pauperis.*  to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge.  (ECF No. 6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court is required to conduct this initial review prior to the service of the complaint.  *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.   *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim against Defendants Branch County, Branch County Sheriff's Office, Riley,

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Shawnna, Parker and Knack.  The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Blankenship: official capacity claims; Eighth and Fourteenth Amendment claims for unconstitutional conditions of confinement, Plaintiff's use of a wheelchair and crutches, and medical care claims concerning the actions of nonparties; claims concerning Plaintiff's use of the grievance process; and claims related to Plaintiff's PREA complaint.  Plaintiff's medical care claim against Defendant Blankenship for refusing to allow Plaintiff to obtain a second opinion after the non-party surgeon determined that surgery was not possible to correct Plaintiff's broken hand remains in the case.  The Court will deny Plaintiff's motions to appoint counsel (ECF Nos. 7 and 11).

<u>**Discussion**</u>

## I.    Factual Allegations

Plaintiff is presently incarcerated in the Branch County Jail, located in Coldwater, Branch County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues Branch County, Branch County Sheriff's Office, and Branch County Sheriff Fred Blankenship, Jail Administrator/Captain Todd Riley, Jail Nurse Unknown Shawnna, Jail Doctor Unknown Parker, and Corrections Officer Trevor Knack in their official capacities.  (Am. Compl., ECF No. 9, PageID.13–14.)

Plaintiff alleges that he arrived to the Branch County Jail on May 23, 2025, having recently broken his foot ten days earlier.  (*Id.*, PageID.15, 16.)  He was kept in a holding cell for the first four days without a shower or pain medication until he was able to see the surgeon.  (*Id.*)

Plaintiff was taken to see the surgeon on May 27, 2025. (*Id.*, PageID.16.) During his visit with the surgeon, Plaintiff obtained a hard cast. (*Id.*, PageID.15.)

When he returned to the Branch County Jail, Defendants Blankenship and Riley denied Plaintiff the ability to use a wheelchair or crutches because they said that the wheelchair and crutches were weapons. (*Id.*) Plaintiff was required to walk on his hard cast. (*Id.*) Plaintiff was also denied pain medication and trash bags to use to shower. (*Id.*) Defendant Knack told Plaintiff that he and other non-parties could not provide Plaintiff with trash bags. (*Id.*) When Plaintiff was given a trash bag, it had holes in it so that when Plaintiff tried to make a "water bag out of it," his "cast got soaked." (*Id.*)

After two weeks of showering with and walking on his cast, the cast got a hole in it. (*Id.*) Plaintiff was taken back to the orthopedic surgeon on June 10, 2025. (*Id.*) During that visit, the surgeon was upset that Plaintiff's cast was destroyed in less than a month. (*Id.*, PageID.18.) The surgeon provided Plaintiff with an air cast that Plaintiff could take off in the shower. (*Id.*)

On June 14, 2025, Plaintiff fell while getting out of the shower. (*Id.*, PageID.16.) He was taken to a medical observation cell where he was denied medical care and made to sit for 6 hours in his own urine. (*Id.*, PageID.18.) After three weeks, Plaintiff was taken back to the surgeon where he obtained x-rays and learned that his foot was not healing properly. (*Id*, PageID.19.)

On July 19, 2025, Plaintiff slipped again while getting out of the shower and broke his hand.  (*Id.*)  Plaintiff states that there is no bathmat or "little ribs" on the floor to prevent slipping.  (*Id.*)  Plaintiff was taken to the orthopedic surgeon but was denied surgery because of issues with Plaintiff's liver and blood enzymes.  (*Id.*)  Defendant Blankenship denied Plaintiff the opportunity to obtain a second opinion.  (*Id.*)

Plaintiff alleges that the "nurse is never here and don't know anything" and the "doctor don't care."  (*Id.*)

Plaintiff claims that he is "supposed to see a physician and a doctor about [his] blood and liver" but was "denied."  (*Id.*, PageID.20.)  He also alleges that "[t]here was a PREA that happened that the jail never did anything about."  (*Id.*)

Plaintiff further alleges that he filed grievances but "never herd [sic] back about them."  (*Id.*, PageID.16.)

As relief for the events described in the amended complaint, Plaintiff seeks monetary damages.  (*Id.*, PageID.17.)

## II.    Request for Appointment of Counsel

On August 8, 2025, Plaintiff submitted a letter to the Court reiterating the claims set forth in his complaint, and stating, "I really need to talk to a lawyer . . ." (ECF No. 7, PageID.8.)  On September 5, 2025, Plaintiff submitted a second letter, again reiterating his allegations and stating, "I really would like to talk to an attorney in person."  (ECF No. 11, PageID.27.)  The Court will generously construe these letters as motions to appoint counsel.

Indigent parties in civil cases have no constitutional right to a court-appointed attorney.  *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993).  The Court may, however, request an attorney to serve as counsel, in the Court's discretion.  *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances.  In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel.  *See Lavado*, 992 F.2d at 606.  The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position.  Therefore, the Court will deny Plaintiff's motions to appoint counsel.  (ECF Nos. 7 & 11.)

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that

is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.   Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendants Branch County and Branch County Sheriff's Office

Plaintiff lists Branch County and the Branch County Sheriff's Office in the caption of his amended complaint.  However, the Branch County Sheriff's Office does not exist as a separate entity; it is simply an agent of the county.  *See Vine v. Cnty. of*

*Ingham*, 884 F. Supp. 1153, 1158 (W.D. Mich. 1995) (citing *Hughson v. Cnty. of Antrim*, 707 F. Supp. 304, 306 (W.D. Mich. 1988); *Bayer v. Almstadt*, 185 N.W.2d 40, 41 (Mich. Ct. App. 1970)).

As to Branch County, Plaintiff makes no factual allegations against Branch County. Branch County may not be held vicariously liable for the actions of its employees under § 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) . Instead, Branch County is liable only when an official policy or custom causes the constitutional injury. *Connick*, 563 U.S. at 60. This policy or custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003). "Governmental entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged violation of constitutional rights." *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (citing *Monell*, 436 U.S. at 692).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the United States Court of Appeals for the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v.*

*Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996).  "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.*

Here, although Plaintiff's amended complaint alleges wrongdoing during Plaintiff's incarceration in the Branch County Jail, Plaintiff fails to allege any facts whatsoever that would plausibly suggest the existence of a custom or policy, let alone that any policy or custom was the moving force behind his alleged constitutional injuries.  *Cf. Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation).  Therefore, the Court will dismiss Plaintiff's claims against Defendants Branch County and Branch County Sheriff's Office for failure to state a claim.

## B.    Official Capacity Claims

Plaintiff sues Defendants Blankenship, Riley, Shawnna, and Parker in their official capacities only.  (Am. Compl., ECF No. 9, PageID.14.)  Official-capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell*, 436 U.S. at 690, n. 55).  Therefore, an official-capacity suit is to be treated as a suit against the entity itself. *Id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); s*ee also Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "Individuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *Alkire*, 330 F.3d at 810;

10

*Graham*, 473 U.S. at 165–66.  Thus, Plaintiff's claims against these in their official capacities are, in reality, claims against Branch County.  Therefore, for the reasons detailed above, the Court will dismiss Plaintiff's official capacity claims for failure to state a claim.

### C.    Individual Capacity Claims

Although Plaintiff states that he is suing Defendants in their official capacities only, the Court will liberally construe Plaintiff's complaint as raising individual capacity claims as well.

#### 1.    Eighth and Fourteenth Amendment Claims

Plaintiff is a parolee held under custody of the Branch County Jail.[2]  Courts are split on whether an individual being held for a suspected parole or probation violation is to be treated as a pretrial detainee or a convicted prisoner.  *See Green v. Taylor*, 1:22-cv-1007, 2023 WL 415502, at *4 (W.D. Mich. Jan. 26, 2023) ("The issue of whether a person confined during the pendency of probation violation proceedings should be treated as a pretrial detainee or a convicted prisoner for purposes of a constitutional challenge to jail conditions is an issue upon which courts have differed.") (collecting cases).  This means that it is unclear whether Plaintiff's claims should be judged according to an Eighth or Fourteenth Amendment standard.

---

[2] *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=755056 (last visited Oct. 1, 2025).

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.

While the Eighth Amendment limitation applies to "punishments," a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (footnote and citations omitted). When a claim of deliberate indifference "is asserted on behalf of a pretrial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (internal quotation marks and citations omitted). Under the Fourteenth Amendment, "[a]

12

pretrial detainee must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Brawner v. Scott Cnty.*, 14 F.4th 585, 597 (6th Cir. 2021) (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)).  He or she must prove that the defendant acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known."  *Id.* (citation and quotation marks omitted).  However, while *Brawner* "modified the second prong of the deliberate indifference test applied to pretrial detainees to require only recklessness," *Brawner*, 14 F.4th at 592, 596, it "left the [objective] prong untouched," *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022).

### a.     Conditions of Confinement Claims

Plaintiff alleges that, upon his arrival to the Branch County Jail, he was kept in a holding cell for the first four days without a shower.  (Am. Compl., ECF No. 9, PageID.15–16.)  He also claims that he twice fell while getting out of the shower because the floor was not equipped with a non-slip surface, and on June 14, 2025, was made to sit for 6 hours in clothes soaked in urine.  (*Id.*, PageID.16–18.)  These allegations, taken as true, do not state a claim for violation of Plaintiff's Eighth or Fourteenth Amendment rights against any named Defendant because Plaintiff does not identify the name of the individual or individuals responsible for any of the foregoing actions.

As with any § 1983 claim, "each [g]overnment official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Iqbal*, 556 U.S. at 676.  Thus, it remains Plaintiff's obligation to attribute factual allegations to particular

defendants.  *See Twombly*, 550 U.S. at 544. Plaintiff does not provide the Court with facts that would suggest that any named Defendant was involved in the decision to deny Plaintiff a shower for four days.[3]  The same is true of Plaintiff's claim that, after falling on June 14, 2025, he was placed in an observation cell and was made to sit in his clothes soaked in urine for 6 hours until he was provided with clean clothes and a shower.  Plaintiff alleges that this was during non-party Sergeant Waterburry's shift; however, Plaintiff does not identify any individual who was aware that Plaintiff had urinated on himself but refused to provide him with clean clothes.

With respect to his claim that he slipped and fell on the wet floor on June 14, 2025, and again on July 19, 2025, Plaintiff alleges that he complained to "staff" (Am. Compl., ECF No. 9, PageID.19), but he does not allege that he had any conversations with any of the named Defendants concerning his falls or the slippery floor.  Plaintiff's reference to "staff" generally is insufficient to implicate any named Defendant. "Summary reference to a single, five-headed 'Defendants' [or officers or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted).  Therefore, Plaintiff fails to state any conditions of confinement claims against the named Defendants.

---

[3] Plaintiff also does not allege a sufficiently serious risk to his health or safety in claiming that he was deprived of a shower for four days. As the Sixth Circuit explained in *Richmond v. Settles*, 450 F. App'x 448 (6th Cir. 2011): "This Court has concluded that deprivation of a shower and other personal hygiene items for a "brief span of time . . ., i.e., only six days" is not actionable conduct." *Id*. at 455 (citing *Siller v. Dean*, 205 F.3d 1341 (6th Cir. Feb.1, 2000) (unpublished decision); *Walker v. Mintzes*, 771 F.2d 920, 928 (6th Cir.1985)). Therefore, Plaintiff's conditions of confinement claim premised upon the denial of a shower for four days is subject to dismissal on this basis as well.

14

To the extent that Plaintiff seeks to hold Defendant Blankenship liable for the actions of his subordinates, he may not do so.  Government officials, such as Defendant Blankenship, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff has not alleged facts that would demonstrate that Defendant Blankenship knowingly authorized or acquiesced in any of the foregoing conditions of confinement. Therefore, any alleged failure to act, without more, does not give rise to liability under Section 1983. *See Grinter*, 532 F.3d at 576; *Shehee*, 199 F.3d at 300.

Accordingly, for each of the foregoing reasons, the Court will also dismiss Plaintiff's claims of unconstitutional conditions of confinement for failure to state a claim.

### b.    Medical Care Claims

Plaintiff alleges that he was denied medical care. Specifically, Plaintiff claims that, upon entering the Branch County Jail, he was kept in a holding cell for four hours without pain medication. Plaintiff also alleges that, after receiving a hard cast, Defendants Blankenship and Riley denied Plaintiff use of a wheelchair or crutches because they believed them to be weapons, Plaintiff was denied pain medication, Defendant Knack refused to provide Plaintiff with a trash bag without holes in it for Plaintiff to use in the shower, and Plaintiff was denied treatment for his blood and liver issues. Following his June 14, 2025, fall, Plaintiff was denied medical care. And, following the July 19, 2025, fall, the non-party orthopedic surgeon determined that

Plaintiff was unable to have surgery because of his liver and blood enzymes.  Plaintiff alleges that Defendant Blankenship denied Plaintiff the opportunity to obtain a second opinion.  Finally, Plaintiff lists Defendant Shawnna, identified as a jail nurse, and Defendant Parker, identified as a jail doctor, and claims that the "nurse is never here and don't know anything" and the "doctor don't care."  (Am. Compl., ECF No. 9, PageID.19.)

The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).  Like Eighth Amendment claims, generally, a claim for the deprivation of adequate medical care under the Eighth Amendment has an objective and a subjective component.  *Farmer*, 511 U.S. at 834.  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person."  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips*, 534 F.3d at 539–40.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care.  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).  Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for

the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Under the Fourteenth Amendment, a pretrial detainee must still show that he faced a sufficiently serious risk to his health or safety to satisfy the objective prong, *see Hyman*, 27 F.4th at 1237, but need only allege facts to plausibly suggest that the defendant acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known," *Brawner*, 14 F.4th at 596 (citation and quotation marks omitted).

As to Plaintiff's claims that he was denied pain medication and denied medical care following the June 14, 2025, fall and for his blood and liver issues, and that the non-party orthopedic surgeon denied him surgery, Plaintiff fails to state a claim against any named Defendant.

Plaintiff includes general allegations against Defendants Shawnna and Parker, claiming that the "nurse is never here and don't know anything" and the "doctor don't care" (Am. Compl., ECF No. 9, PageID.19); however, Plaintiff does not describe any actions or personal involvement by either of these Defendants. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials

arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, 238 F.3d 421 (6th Cir. 2000) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, 904 F.2d 708 (6th Cir. 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

Plaintiff fails to set forth any facts concerning the personal involvement of Defendants Shawnna and Parker. Therefore, Plaintiff's allegations against these Defendants fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). For that reason, Plaintiff's individual capacity claims against Defendants Shawnna and Parker will be dismissed.

Plaintiff also alleges that Defendants Blankenship and Riley denied Plaintiff the use of a wheelchair and crutches. However, Plaintiff does not provide the Court with any facts that would plausibly suggest that the use of a wheelchair and crutches was required with Plaintiff's particular hard cast, much less that Defendants Blankenship and Riley knew of or even recklessly disregarded a substantial risk of harm in denying Plaintiff the opportunity to use a wheelchair or crutches. Plaintiff alleges that he saw the surgeon for a follow-up visit on June 10, 2025, and while he states that the surgeon was unhappy with the fact that his cast had been destroyed in less than a month, Plaintiff makes no mention of any concerns regarding the lack of wheelchair or crutches. Plaintiff asks the Court to fabricate plausibility to his claim from mere ambiguity; but ambiguity does not support a claim. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678-79. Therefore, the Court will dismiss Plaintiff's claims against Defendants Blankenship and Riley based upon their refusal to allow Plaintiff the use of a wheelchair or crutches.

Plaintiff further alleges that Defendant Knack refused to provide Plaintiff with a trash bag to allow Plaintiff to keep his cast dry while showering, resulting in Plaintiff's cast being destroyed in less than a month. While Plaintiff alleges that his doctor was upset that the case was destroyed, Plaintiff received prompt medical care and does not allege that the wet cast posed a sufficiently serious risk to his health or safety. Accordingly, Plaintiff fails to satisfy the objective prong with respect to his claim against Defendant Knack.

20

Finally, Plaintiff alleges that Defendant Blankenship refused to allow Plaintiff to obtain a second opinion after the non-party surgeon determined that surgery was not possible to correct Plaintiff's broken hand.  Although Plaintiff has by no means proven his claim at this stage, taking his allegations as true, and out of an abundance of caution, applying the more lenient Fourteenth Amendment standard, the Court will allow Plaintiff to proceed with this Fourteenth Amendment medical care claims against Defendant Blankenship in his individual capacity.

### D.    Claims Regarding Plaintiff's Use of the Grievance Process

Plaintiff alleges that he filed grievances but never received responses.  To the extent that Plaintiff seeks to bring an independent § 1983 claim against Defendants related to his use of the grievance process, his claims will be dismissed.

First, Plaintiff has no due process right to file a prison grievance.  The courts repeatedly have held that there exists no constitutionally protected due process right to an effective grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).  Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, 19 F.3d 1435 (6th Cir. 1994).

Second, any actions (or inactions) of Defendants with regard to the grievance process could not constitute a violation of the First Amendment right to petition the government. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond). Plaintiff has not been barred from all means of petitioning the government for redress of grievances. Even if Plaintiff had been improperly prevented from filing a grievance, his right to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Accordingly, Plaintiff cannot state a claim concerning his use of the grievance process upon which relief may be granted.

### E.    Claims Related to Alleged "PREA" Incident

Plaintiff alleges that "[t]here was a PREA that happened that the jail never did anything about." (Am. Compl., ECF No. 9, PageID.20.)  However, Plaintiff "has no independent cause of action for any [individual's] failure to comply with the [PREA]." *Beeman v. Heyns*, No. 1:16-cv-27, 2016 WL 1316771, at *12 n.4 (W.D. Mich. Apr. 5, 2016) ("Although not addressed in the Sixth Circuit, district courts have found that the PREA does not create a private cause of action which can be brought by an individual plaintiff." (quoting *Montgomery v. Harper*, No. 5:14-cv-P38R, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014))); *see also McCloud v. Prack*, 55 F. Supp. 3d 478, 482 n.2 (W.D.N.Y. 2014) ("[N]othing in the statute suggests that PREA intended to establish a private cause of action for allegations of prison rape, and every court to address the issue has determined that PREA cannot support such a cause of action by an inmate." (quoting *Amaker v. Fischer*, No. 10-cv-977, 2014 WL 4772202, at *14 (W.D.N.Y. Sept. 24, 2014))); *Barhite v. Berghuis*, No. 1:14-cv-670, 2014 WL 4627166, at *5 (W.D. Mich. Sept. 15, 2014) ("Plaintiff's request is predicated on the assumption that the PREA provides him a cause of action for Defendants' alleged sexual assaults. It does not.").  Plaintiff's claims pursuant to the PREA will, therefore, be dismissed.

To the extent that Plaintiff attempts to bring an Eighth or Fourteenth Amendment claim related to the alleged sexual assault, he fails to state any such claim.  "Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761

(6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards).  However, Plaintiff has not alleged facts that would suggest that any named Defendant personally took any action that violated Plaintiff's constitutional rights.  *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government- official defendant, through the official's own individual actions, has violated the Constitution.").

Plaintiff alleges only that the "jail" failed to act after the fact.  However, Plaintiff's allegation against the "jail" fails to implicate any named Defendant, *see Boxill*, 935 F.3d at 518.  Therefore, for these reasons, the Court will dismiss any claims premised upon the alleged PREA incident.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*.  Having conducted the review required by the PLRA, the Court determines that Defendants Branch County, Branch County Sheriff's Office, Riley, Shawnna, Parker, and Knack will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Blankenship: official capacity claims; Eighth and Fourteenth Amendment claims for unconstitutional conditions of confinement, Plaintiff's use of a wheelchair and crutches, and medical care claims concerning the actions of nonparties; claims concerning Plaintiff's use of the grievance process; and claims related to Plaintiff's PREA complaint.  Plaintiff's medical care claim against Defendant Blankenship for refusing to allow Plaintiff to obtain a second opinion after the non-party surgeon determined that surgery was not

possible to correct Plaintiff's broken hand remains in the case.  The Court will deny Plaintiff's motions to appoint counsel.  (ECF Nos. 7 & 11.)  Plaintiff's amended complaint will be served on Defendant Blankenship.

      An order consistent with this opinion will be entered.


Dated:  November 2, 2025                              /s/ Phillip J. Green
                                                                    PHILLIP J. GREEN
                                                                    United States Magistrate Judge

25